case number 24 1963 Michonne Houston versus Jeff Tanner oral argument not to exceed 15 minutes per side mr. Kent Eric you may proceed for the morning may I please the court my name is Kyle Kent Eric I'm counsel for appellant Michonne Houston with me as my colleague Sydney Duncan we're I have saved three minutes for a bottle we're here asking this court to give mr. Houston a chance to get what he has never received which is an evidentiary hearing so that the full record and facts can be placed so that the full tax can be placed in the record we he has met all the relevant standards and so we're asking this court to give him a chance before the district court so that any credibility determinations or factual disputes can be correctly decided this courts authorization order in 2019 at least sought such fuller exploration specific the case when it was in this letters to the mission the innocence clinic it just kind of sat there and he was wondering what they were doing is I'm trying to figure out why that took so long yeah yes judge Sutton I have the same same same questions if we look at the record we have mr. Houston's affidavit on that score where he explains and this is this is ECF 11 page ID 1205 he explains at the end of his second affidavit that in seven he contacted the clinic on multiple occasions asking for information about its investigation and its interview with Miller and they refused to share information with him the clinic told them that their communications weren't privileged because they didn't have an attorney client relationship so it couldn't share information and so we know that he repeatedly asked the clinic for information and the clinic repeatedly refused so that's that's what we have in the record about what happened at an hearing certainly we call members of the clinic and ask them these questions the judge the district judge could ask questions we could ask questions and they could be subject to cross to try to determine what what exactly happened there but as far as this record goes you know we just know that mr. Houston asked for it repeatedly was in jail and didn't couldn't couldn't do much else I guess is what we know from the record but that would just go to the diligence prong right whatever the whatever the innocence clinic would say would only go to whether mr. Houston has met the diligence prong that's correct and he also has to meet the other the second prong the yes the the clear and convincing evidence certainly so what I guess I'm wondering what what disputes of fact remain I mean the sloop type cases tell us you know the Supreme Court told us that that the court may have to make credibility determinations is it your position that those can never be made on the face of an affidavit there evidentiary hearing is always required no judge arson um I think here so so so the answer your question is no there are there are certainly times when a judge can make that decision and that's the Poland Huff cases I don't believe so I'm looking at my 2255 language but I guess let me just answer your first your first question maybe we can go back to the 2255 question maybe I can answer it reply we know that judge Cox misunderstood the record he misinterpreted the affidavits and we know that based on his own language right so so he is able to if it's inherently incredible he can he can make that determination but if you look at what he said he said things that are just contrary to what the record says so in re16 page ID to 1242 he says mr. Houston made no attempt to Nicole in the time between his conviction and 2012 but but that's not the case if you look at the same affidavit we were looking at before which is re11 page ID 1206 Houston affidavit paragraph 8 he explains that he after his conviction and during his direct appeal he told his appellate lawyer that Nicole Thomas was the last person I spoke to in the area of the was shot my lawyer told me that Nicole Thomas had since moved out of the neighborhood and had not left contact information so she could not be located but that again only goes to the diligence problem right so what about just with respect to the credibility of the affidavits for showing clearing by clearing commencing evidence that no reasonable juror would have convicted him I mean even if we credit the Miller affidavit you still have to I witnesses at trial why is it clear and convincing that they would have to believe Miller as opposed to the other two it sure I'm sorry I misunderstood your question before um so I think I think the first thing we should look at is the clear and convincing prong is really just any juror would have had reasonable doubt that they wouldn't be so certain as to convict him and so I think and then if we look at the language of 2244 it says the facts underlying the claim if proven and viewed in the light of the evidence as a whole and sorry and viewed in the light of the evidence as a whole and I think that actually makes these affidavits stronger right but I just want to make sure you're engaging with her I mean she's saying there's two eyewitnesses and we you have to show no reasonable juror would believe them and why why did these affidavits take you down that road by quoting me the standard I don't understand how you're engaging her I'm sorry I was I apologize I was about don't apologize just yes show me I'm wrong sure sir the substance of the affidavits it makes it stronger right there's only two eyewitnesses there's no physical evidence the one eyewitness is now we know is the actual murderer so his credibility shot and the eyewitnesses sorry we sorry we have a third party eyewitness who explains that one of the witnesses is the actual murderer that fits with the Johnson affidavit which in which he recants his testimony says he was never there says the other witness threatened him threatened to murder him and also had him picked up on drug charges so that explains so Miller's affidavit specifically explains hey why why would this other witness when does the recanting effort when when does the recanting happen in relation to the murder the recanting affidavit was signed in 2013 and I'm just that how many years oh the murder happened in 2012 11 years okay um so but but what do you do with the fact that that that generates skepticism I think that that's okay it's all well and good that it generates skepticism but I think the is we still have to look at what the affidavit say we can be skeptical but that doesn't mean that we discount them and if you also look at the Jones affidavit that bolsters Johnson's affidavit it explains that Jones ran into Johnson and he was conflicted about the trial testimony he said the hook was in him and he was going to find a way to make it right unfortunately mr. Johnson is deceased now but it also explains that he was threatened he was he was fabricated by mr. Crooks is again how he explains it and then he was threatened with his life if he didn't testify falsely so these are reason that we can be skeptical but if these facts and and if you look at the briefing at in our opening brief we kind of we lay out facts that were reduced at trial that actually support this version of events right mr. Crooks his versions of events fit with the medical examiner because he was the one that was there mr. Johnson's event mr. Johnson's version of the events do not and I think one last point specifically about the prejudice inquiry in closing mr. Houston's attorney explained you know I can't prove who did it right he also went back and forth he said maybe Crooks was there and Johnson's lying or maybe Johnson was there and Crooks is lying but the Jones affidavit explains that everyone on the street knew the Crooks did it I agree with you and I'm not supporting it I'm not offering it for the truth simply any investigation right that the Langford did could have done talks to a few people if everyone knows Crooks did it he can at least craft his closing argument or his defense to point to one specific person without Miller and without investigating miss Thomas and finding Miller Johnson has there's no out for Johnson if we find Miller Johnson doesn't even have to testify falsely because we have evidence and the case can be brought against mr. Crooks your theory is that if if Miller I'm sorry if the attorney had talked to Nicole Nicole would have led to Miller then the police would have instantly arrested Crooks on Miller's say so so Johnson would have felt comfortable to testify um I would just I wouldn't say instantly but but again we can see from the Jones affidavit and from Johnson's recantation right he he was he wasn't certain he wasn't certainly going to testify falsely there was there was room for him to be investigated and perhaps tell the truth and when there is an identification from an disinterested third party of who the actual murderer is then perhaps that provides Johnson's and protection it also provides a reason for mr. Houston's attorney to actually perhaps talk to him and and he can say oh you say this but this is what mr. Miller says and maybe again I'm simply saying the trial would certainly not have happened the way it did which is no evidence offered at all by mr. Houston's attorney and two eyewitnesses completely uncontradicted if you look at the the closing argument for the state again I can get that specific testimony they say you know we we showed that someone was that was killed with premeditation the no one's come up here or mr. Crooks and mr. Johnson say it was mr. Houston no one has come up here and contradicted that story mr. Miller would have contradicted that story even if mr. Miller had been discovered maybe mr. Johnson doesn't testify falsely there's it's just it's basically hard to find evidence that isn't controverted by these affidavits all right you'll get good morning good morning your honors and may it please the court assistant attorney general Jared Schultz on behalf of the respondent there are many different components to this to this appeal but there is one theme that is apparent among them all it is the petitioner's burden to meet several significant highly difficult standards in order to obtain habeas relief it is also apparent that the factual predicate underlying his petition both the circumstances surrounding how he he uncovered those facts and the underlying facts himself are highly incredible and completely unsupported by the record therefore it was the district court was correct to not to deny the petition and also correct to do so without holding an evidentiary hearing sorry and it was also in the holding an evidentiary hearing is an abuse of discretion standard so it was within the district court's discretion not to hold an evidentiary hearing before denying relief so I want to go through some of the the standards because again these are very difficult to meet standards and there are three of them here that petitioner has to meet in order to obtain habeas relief the first is because this is a second second mr. the petitioner second habeas petition he has to meet the burden under 2244 b2 b2 and there's two prongs to that and the first is the diligence prong which judge Larson you talked about a little bit and that is that he could not have discovered the factual predicate to his claim but for excuse me through it he could not have discovered late into that that he tried to get help through the clinic and was he supposed to like after not hearing back from them go down another path no I I think that the whole clinic thing is is part of the incredible nature of the whole claim he doesn't support this I asked the clinic with any any facts any evidence showing that I asked the clinic I I wrote a letter and and here's the letter here's a letter that they came back saying that they're not going to give me give me anything it's completely based on his own own say so that he he didn't receive this evidence from the clinic but we do know based on what what he said that he learned of of mr. Miller's testimony excuse me of his involvement in this case way back in in 2010 didn't do anything about it until 2016 a couple weeks later yes that may be but again so what he is saying essentially is that I I talked to this guy he said I'm I'm part of this case but didn't tell him how he was a part of this case I I don't I don't understand what he's saying in that regard that this guy said yes I know something about your case but then didn't tell him I saw the the actual shooter I think that just goes to the incredible nature of the whole claim and then he again claiming that he should have from another prison contacted mr. Miller we don't have there don't seem to be a lot of cases on what counts as reasonable diligence in this kind of circumstance where there are two incarcerated prisoners do you have anything on that like maybe he should have written a letter to the prison and some is there anything to help us there no I I don't know that there's any cases that that directly go to that what we do know here though is that mr. Miller supposedly told him that he's part of the case in 2010 and signed an affidavit in 2014 it doesn't make sense and there's nothing in the record to explain why he then did not have that information in 2014 and file his state motion for relief from judgment sometime within the time period after that instead he waits two years before he does and all I can come up with the same well the innocence clinic didn't didn't give me didn't give me the affidavit until then but that doesn't make sense why would an innocence clinic not give him the affidavits to support his claim when he came to them in the first place he gave them mr. Miller and said mr. Miller is a witness and that can help me and the innocence clinic apparently just sat on it for two years it's just it doesn't make sense he doesn't remember this but where is crooks right now crooks I he's I don't believe he's in prison so he's out free and so forth as far as I know yes your honor and and sorry go ahead diligence the second prong requires that the facts underlying the claim which are the facts of the Miller testimony if proven and viewed in the light of the evidence as a whole would be sufficient to establish by clear and convincing evidence that no juror would have found him guilty so the district court discounted the Miller affidavit and the other affidavits as being incredible it is and schloop tells us that courts may have to make credibility determinations and I guess what I'm wondering is can the district court do that on the alone and do we defer to the district court's credibility judgment on those affidavits or do we review them ourselves and de novo and decide whether they're credible um well first I'll go to your schlub point and and I'll also point out that in McQuiggan in both of those cases they never said that an issue in fact they both show that you don't have to hold evidentiary at the end of slope the court said if the court so chooses the whole evidentiary hearing it can but it's the district courts a determination of whether these issues are credible and even in McQuiggan the affidavits there the evidence there was significantly less incredible than here there were there was there was not a the atheans weren't in prison for first-degree murder and and subject to life in prison without parole what would be an abusive discretion I'm sorry what would be an abusive discretion on this hearing point would it be you know you have to have a affidavit from Crooks who says I did it I mean how would you what what would you need to say this was an abusive discretion not to explore it more I I don't know what you would need I I I know that pretty low bar and it sorry go ahead your honor well I'm just I'm just trying to figure out how this would work and it seems like that's a lot of authority in the district court but but the abusive discretion standard goes along with the heightened standard that he has to prove in order to obtain habeas relief here because in the second or successive standard he has to show as part of the second prong there's there's actually two components first that no reasonable juror would have guilty not just that one reasonable jury would have acquitted that not one reasonable jury would have voted found him guilty and also he has to show that by clear and convincing evidence so that's a very extremely heightened standard there when you have credibility issues that he can that's why I'm thinking it wouldn't work unless he had an affidavit from Crooks who said I did it maybe and maybe that's so I it's pretty rough well abusive discretion is very you know it leads it to the district court's discretion in what kind of cases have we or other courts reversed a district court for failing to hold a hearing I'm not off the top of my head I'm not aware of those cases I think the the point here though is that essentially what the district court has is even if we haven't it didn't say this explicitly but even if we have an evidentiary hearing what could what could that hearing prove that wouldn't would disprove the credibility questions we have here I don't think there's anything there correct people would testify presumably would be Miller the attorney maybe some people from the innocence clinic but that would go only to the diligence prong Jones whose testimony is this is what was being said in the neighborhood yeah I think we can discount Jones's testimony first because it's it's complete hearsay and second because it he didn't bring that until almost 15 16 years after after the trial just seems completely incredible to me again I guess if he testifies at the evidentiary hearing that's one thing and I'm sorry if you were I was just wondering if that's the universe of witnesses right and and I can't think of any any other witness besides maybe the petitioner himself or and Crooks but I don't I don't know that Crooks would testify at a hearing where he is accused of first-degree murder you might think about the Fifth Amendment for a little bit yeah yes your honor exactly and and I guess I just don't see how that that that doesn't undermine any of the credibility problems that the district court pointed out it doesn't undermine the fact that Miller met the petitioner in prison and they talked about the case while they're in prison it doesn't undermine that Miller has no incentive not to lie because he's already in prison for the rest of his life it wouldn't undermine if you go to the merits of the case that Miller says in David that I didn't I never told Tom Nicole Thomas about what I saw so I don't you can't even you can't prove prejudice to begin with because if you go if the attorney goes and talks with Miss Thomas she says there's you know I don't know I didn't see anything I don't know how that that would lead to mr. Miller at that well I mean I wouldn't the attorney say do you know anyone who might have seen something I mean that's one and then pretty obvious question well and then she tells oh my boyfriend he was sitting outside waiting for me but he also said that I he told miss Miller I didn't I'm sorry miss Thomas I didn't know anything I didn't see anything I don't know anything about it and then they even in Miller's affidavit he says he they go out again a few times and there's he doesn't say anything about it wait no yeah maybe I have the Miller told Thomas it's not that Miller didn't say anything to Thomas but Miller told Thomas affirmatively I didn't see anything I don't know anything about it what what he says is that she what Miller says is that she called called him after the shooting I heard shots saying are you all right he says yes I don't know anything about any shooting so he affirmatively says that he did not tell her that he knew anything so again and we can't Thomas's is is dead we don't we can't get any any more testimony from her so and what an evidentiary hearing would prove I again I don't think that would undermine some of these credibility determinations that the district court made so have holding an evidentiary hearing would just be a waste of judicial resources at that point I'm sorry I can't keep this straight in my head but still would help me to know the answer is there anyone who claims to have evidence about this that is not in prison and is alive other than crooks so Johnson I there's been there's some some points in the record that say that he's no longer living I haven't been able to verify that but that's that's what I thought in the record yes I or let's just assume Johnson's dead for the other side but answer the question who sorry who is out free in the world other than crooks that claims to have some evidence about who did this there is nobody your honor okay so the only people are either dead or in prison that's correct I guess I would caveat that there was in the trial there was some evidence that there was other witnesses that saw it but they didn't even weren't even appearing for trial there's no no other witness other than people who are in prison or dead that say that that undermined the evidence that Pete to the extent the people living are making things up they're not at risk of being hurt by crooks because they were in prison that's cannot yeah yes that's that's correct your honor but again I don't think that it's the district court abuses discretion by not holding an evidentiary hearing and finding that the Miller affidavit along with the other affidavits were completely incredible and at the very least whether he found them incredible or not but know that it couldn't show that no reasonable juror could have found that evidence I'm sorry your honor no go ahead so um the state court here made a determination based on the state courts second or successive 6500s hurdle that these affidavits were incredible do we I mean I understand it's on a state procedural bar but is that a finding of fact to which we defer under EDPA or not is there any case law on that well are you saying under the unreasonable determination of the the facts or yeah I yes I think so that he has to show by clear and convincing evidence that are that those facts were unreasonable those facts as by the state trial court or are we right so I'm just I'm wondering about who's the decision maker who makes a determination of credibility and do we owe any deference to these various decision makers could be the state court on the equivalent you know the 6500 procedural bar these affidavits are so you can't get over Michigan's second or successive do we owe deference to that or the federal district court here made a determination do we owe deference to that or do we just look at the affidavits ourselves in light of you know when they were when the affidavits were sworn out etc and make our own credibility determination yeah I guess it's a difficult question your honor I I do think in in the habeas world you know the the whole point of habeas is that we defer to the state courts and their their decision and it's an extraordinary remedy it's a grant habeas relief and I think that going along with that is that we have to defer to the credibility determinations that you don't have any case law that no I don't I apologize your honor okay thanks very much thank you I have some case law so for this the state court determination judge Larson I think you were asking about how do we defer and in which way I think Clark first Warden I think judge Batchelder was on in the majority this is this that's this court there they kind of went through what sort of deference they must give to the state court and and then I would like to just say that this was the state courts newly discovered evidence test they did they did kick out the Strickland claim completely on a procedural basis so we so they didn't even consider the Strickland claim but even if you know there's there's been some discussion about the prejudice standard having a similar probability determination but if you look at Clark first Warden it talks about how this is kind of a mixed law and fact question we don't how there's no if proven language in the state court for that procedural rule or I'm sorry for that newly discovered evidence test in the state court and also I'd like to say that the state court only looked at the Miller affidavit and made improper credibility determinations there's some of that briefing as well as for remands for evidentiary hearings that's the polo case we talked about earlier you mentioned it was 2255 I looked I don't think that there's a difference based on that being the right section I also there was there was a discussion about what now I'm just going back to what you discussed with opposing counsel but please raise any questions um there's a I just want to correct the record and in 2010 the record shows that all all mr. Houston learned from Miller was that he knew Nicole Thomas and knew generally about the murder I think assuming that we don't know how they interacted in prison there in prison I think assuming that you can just be like oh hi I'm I'm mr. Houston you're mr. Miller who do you know who murdered Nicole Thomas like it's it we could have an evidentiary hearing to determine that but I think the realities of the prison system I think that's yeah I think that's a little bit beyond the pale I think we talked a little bit about crooks I think and we talked about standards this is an actual innocence case crooks is free and we have credible evidence that he's an actual murderer I think that that's there's not a single person not in jail willing to say he did it but so let's let's go through the people mr. Miller's in jail for what for what reason though unrelated and the only reason he wasn't able to offer evidence is because mr. Houston had constitutionally deficient counsel the same thing is could be true for mrs. Miller the I'm sorry mrs. Thomas the initial impetus for mr. Houston asking his attorney to to find miss miss Thomas was that he told her to lock his door the night of the murder so not only could she would she have led to Miller she was potentially an alibi witness so there could there there's all sorts of evidence I think I think I'm sorry I totally agree with you I'm just saying the ineffective assistance of counsel happening 20 some years ago created the situation whereby there's there's people in prison mr. Miller it's so valuable to have people complying with the one-year rule get your evidence you know before it looks pretty sketchy 20 years later and I think and again I think mr. Houston would agree he was trying to contact miss mrs. Tom mrs. Thomas after his original conviction all throughout his appeal he met he correct me if I'm just wrong on the record but you have said now twice that he was repeatedly trying to contact Nicole Thomas show me where that is sure and his and his affidavit second affidavit this is the one filed with the reply before the district court that's DCF 11 page ID 1206 he said after my conviction and during my direct appeal I told my appellate lawyer that Nicole Thomas was the last person I spoke to in the area of the murder on the night Carlton Thomas was shot my lawyer told me that Nicole Thomas had since moved out of the neighborhood the last person I talked to the very night of the murder and that's what you say means he repeatedly tried to contact her after that he himself tried oh no I'm sorry I he's in prison so I'm saying he tried to contact her through counsel and this is what he's saying after my conviction you might just want to qualify what when you've said repeatedly if that's what you meant I apologize otherwise you're gonna continue to have a withering cross-examination I see um I now I understand the difference so perhaps again perhaps yeah repeatedly maybe repeatedly is not the right word he the record says that he told we ever get to his appellate counsel when we're talking about his trial etc or he's actually in trial did he himself make any effort to contact Nicole Thomas not through his attorney no period oh yes so in his first affidavit and this is this was the one filed with our petition he said he said well before trial he asked counsel to go talk to people that lived in Nicole miss miss Thomas's building which is the tenement 50 feet away from the murder scene he also specifically told his counsel to go talk to Nicole Thomas at a different event miss a different time in that same time period because he had as we talked about he had told her to lock his door that night so that's an instance where he told this counsel hey go to this place 50 feet from the murder scene someone might have information later hey go if you go there talk to Nicole Thomas I talked to her the night of the murder and again mr. Houston is not he doesn't live there that's where the murder happened so he's it's not that he has a ton of with the folks at that time thank you of course all right thank you thanks to both of you for your helpful briefs and arguments we really appreciate it the case will be submitted